No. 137-15

NO. —

IN THE

COURT OF CRIMINAL APPEALS
OF TEXAS

RUSSELL WHITEHEAD,

PETITIONER

V.

THE STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

Petition in Cause No. 31618CC from the
County Court of Kaufman County, Texas and
the Court of Appeals for the
5th District of Texas

PETITION FOR DISCRETIONARY REVIEW

# TABLE OF Contents

Index of Authorities

Petition for Discretionary Review:                     -1-

   Statement Regarding Oral Argument

   Statement of the Case

   Statement of Procedural History                -2-

Grounds for Review                                     -2-

Ground 1

Ground 2                                               -3-

Ground 2 cont.                                         -4-

Ground 3                                               -5-

Prayer for Relief                                      -6-

i

# Index of Authorities

## State Cases

Baltazar v. State 331 S.W. 3d 6 (Tex. App. – Amarillo 2010) 3

Bell v. State 734 S.W. 2d 80 (Tex. App. – Austin 1987)    5

Brooks v. State 900 S.W. 2d 468 (Tex. App. – Texarkana 1995)   3, 5

Lane v. State 151 S.W. 3d 188 (Tex. App. – Eastland 2004)   3, 5

Patterson v. State 769 S.W. 2d 941 (Tex. Crim. App. 1989)   3

Reyes v. State 314 S.W. 3d 74 (Tex. App. – San Antonio 2005)

Lane v. State 111 S.W. 3d 203 (Tex. App. – Eastland 2003)

## Statutes

Texas Penal Code 22.01 (b) (2) (A), 22.02 (b) (1)      3, 5

## State Rules

Rules of Evidence, Article IV (Relevancy and it's Limits) 2, 5

Vernon's Ann. Texas CCP ART. 42.12                    3

# PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

Russell whitehead, petitions the Court to review this judgement affirming his conviction for Aggravated Assault DATE/FAMILY/HOUSE w/weapon – Serious Bodily Injury in Cause No. 31618CC.

## STATEMENT REGARDING ORAL ARGUMENT

The grounds for review set forth in this petition concerns whether a court of appeals has declared a statute, rule, regulation or ordinance unconstitutional or appears to have misconstrued a statute, rule, regulation or ordinance. Also, whether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeal's powers of supervision.

## STATEMENT OF THE CASE

The petitioner was convicted by a jury of the offense of Aggravated Assault DATE/Family/HOUSE w/WEAPON – SERIOUS BODILY INJURY after a plea of NOT Guilty; the punishment was assessed by the judge at (25) years of Confinement in the Texas Department of Criminal Justice, Institutional Division. The conviction was affirmed by the Court of Appeals for the 5th District on December 31, 2014.

-1-

# STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered it's Decision affirming Petitioner's conviction on December 31, 2014. A Motion for an extension of Time To file was submitted and granted until March 31, 2015. No motion for rehearing was filed by petitioner and the decision of the Court Of Appeals became it's final ruling on December 31, 2014. This petition was then filed with the Clerk of the Criminal Court of Appeals of Texas, within 60 days, as granted, after such final ruling, to wit, on

# GROUNDS FOR REVIEW

### Ground 1

The Court of Appeals erred in holding that the Trial Court correctly allowed faulty, Inaccurate, Outdated and unsubstantiated testimony by members of the claimant's family who are bound emotionally and by loyalty to support their mother. Both the son and daughter over stated the circumstances of those given events, which, according my Court-appointed attorney said, would be understood in a break-up situation. Claimant's daughter stated that I threatened to kill her Mother which was an inflammatory and untrue statement, Also allowing recorded and narrated evidence that had no relation to the indictment, (Rules of Evidence, Article IV, Relevancy and it's Limits, Rule 404 (a)(1) (A)(a) (b)

-2-

## Ground 2

The Court of Appeals erred in holding that the Trial Court correctly affirmed a finding of a deadly weapon being used to commit serious Bodily Injury based in part on an inflammatory demonstration by the prosecution to show how claimant was straddled and beat with Fists. In fact, there was no evidence or testimony to support that claim and is in conflict with the Indictment as charged. (Texas Penal Code 22.02 (b) (1))

In testimony given by the Caregiver, the injury resulted from a (2) point Contact; not supportive of multiple blows as demonstrated by A.D.A. Williams. According to this excerpt from Patterson v. State 769 S.W.2d 2941 (Tex. Cr. App. 1989): "One can use a deadly weapon without exhibiting it, but it is Doubtful that one can exhibit a deadly weapon during the commission of a felony without using it, for the purposes of ef statute denying possibility of probation to defendant who used or exhibited a deadly weapon. (Vernon's Ann. Texas C.C.P. Art. 42.12   3g 3g (a) In my research of related case law I've found, several cases that reflect Texas penal code 22.02 (b) (1) in showing an affirmitive finding of a deadly weapon being used, as in Brooks v. State 900 S.W. 2d 468 (Tex. App. — Texarkana 1995), Lane v. State 111 S.W. 3d 203 (Tex. App. — Eastland 2003) and Baltazar v State 331 S.W. 3d 6 (Tex. App. — Amarillo 2010). My recorded statement before trial was given freely and accurately and has shown to be supported the State's expert witness. That there was an Injury was not in question as stated in my statement to the police interview on December 1, 2012.

- 3 -

Ground 2 Cont.

The question of how the injury occurred became the focus. I answered with the best of my knowledge through the chain of events that occurred while she was kneeling in front of her Free-standing Jewelry Case and me. There was no straddling attack as claimed of choking or beating with a fist or elbow.

In Cases similar to this one, I've found hands/fists and/or feet were used to severely beat the claimants involved in those cases. Although there was indeed an injury in this case, it was not apparent by knowledge of my actions. Upon verification through observation I tried to get my wife some medical attention, she refused. Following her return to work at Methodist Hospital of Dallas, I asked her to get checked out to be sure everything was ok. She took several days before she did so. The prosecution allows that the delay was my fault. I couldn't force her to do anything. Texas has laws against forcing someone to do something against their will. IT would amount to a misdemeanor charge of some kind. There was no expert witness provided for the defense. The state's expert witness, the attendant caregiver, testified as to the nature of the injury and the subsequent look of "Raccoon Eyes", from the leaking vein into the orbits of the eyes. There no abrasions or fractures associated with this injury. Claimants story changed from the initial report to fall in line with the prosecutions indictment. Manufactured and insufficient evidence was used for this conviction.

-4-

# Ground 3

The Court of Appeals erred in holding that the sentence handed down, (25) years confinement in a penal institution, being a severe punishment, was justified despite defendant's lack of prior felonies, convictions and history for this type of crime.

In researching similar cases, I've found a range of punishments of (5) yrs given in a case with an affirmitive finding of a deadly weapon, (Brooks v. State 900 S.W. 2d 468 (Tex. App. -Texarkana 1995, to a (35) year sentence, handed down as in Lane v. State 151 S.W. 3d 188 (2004), due to prior felonies of the same crime. Prior felony conviction carry importance in it's consideration during sentencing as evinced in Reyos v. State 314 S.W. 3d (San Antonio - 2005). Without a doubt, these types of crime have recently been pursued through an increased public awareness and should be fought against. Overzealousness in not following procedure or not developing programs that assist with de-evolving this type of behaviour is not the answer. As a matter of fact, it ruins lives because of emotional content coupled with misunderstanding and public furor. Assumptive attitudes should not precede the law. Texas Penal Code 22.01 (b) (2) (A), Rules of Evidence (ART. IV, Relevancy and it's Limits, Rule 404 (a)(1)(b).

-5-

## Prayer For Relief

For the reasons herein alleged, the petitioner was denied a fair trial in Cause No. 31618CC. Therefore, Petitioner prays this Court grant this petition, and upon reviewing the judgement entered, reverse this cause and remand it for a new trial

Respectfully Submitted,

Russell White, pro se
Russell Whitehead
TDJC# 1909111
James V. Allred Unit
2101 FM 369 N
Iowa Park, TX 76367

-6-

**AFFIRM as MODIFIED; and Opinion Filed December 31, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00230-CR

### RUSSELL R. WHITEHEAD, Appellant
### V.
### THE STATE OF TEXAS, Appellee

On Appeal from the County Court At Law No. 1
Kaufman County, Texas
Trial Court Cause No. 31618CC

## MEMORANDUM OPINION

Before Justices O'Neill, Fillmore, and Chief Justice Thomas, Retired[1]
Opinion by Justice O'Neill

Appellant Russell Whitehead was charged with aggravated assault–family violence, with serious bodily injury and use of a deadly weapon. A jury convicted appellant, and appellant's punishment was assessed by the trial court at 25 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In three issues, appellant contends the trial court erred by admitting certain exhibits into evidence at trial, and by failing to orally pronounce the sentence of restitution. We sustain appellant's third issue, modify the trial court's judgment, and affirm the judgment as modified. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. RS. APP. P. 47.2(a), 47.4.

---

[1] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

## BACKGROUND

The charges against appellant arose from an assault on his wife Debra in 2012 in which she suffered head injuries. Appellant hit his wife so hard that she lost consciousness. She had two black eyes, a knot on her head, bruises on her throat, and other bruises on her body. She stayed home from work for several days, and then returned to work but tried to avoid seeing any co-workers. Approximately a week after the attack, Debra's head was hurting so badly that she went to her boss, Ellie Huff, who was a registered nurse, to ask for help, although she did not tell Huff the cause of her injuries. Huff assisted Debra in getting a CT scan and going to the emergency room of the hospital where they worked. Debra was later admitted to the hospital and underwent surgery to remove subdural hematomas (blood clots) on her brain. Her neurosurgeon testified that her injuries were life-threatening; that she would have died without the surgery; and that there were permanent effects from the injuries such as difficulty concentrating. Appellant was subsequently arrested and charged with assault.

All of the issues in this appeal arise from the punishment phase of the trial. In the punishment phase, Debra testified that appellant assaulted her for the first time in 1998, hitting her so hard in the back of the head that he broke the barrette she was wearing. He then hit her in the face, causing a gash in her nose. In 2001, appellant grabbed her arm and threw her down, causing a spiral fracture in her arm. In 2002, an attack by appellant caused bruising on Debra's face and arm. Debra testified that she was in a relationship and living with appellant at the time of these assaults, and married appellant in 2002 because she loved him and hoped he would change. After the marriage, other assaults occurred. Debra testified that "[w]e would get into a fight, he would choke me, he would kick me out. And, he would beg me to come home and I would come home. He would be good for a while and then it would happen again."

Debra's son testified that he observed the gash in his mother's nose after the 1998 incident. Debra's daughter testified to an incident in 2006 in which appellant called her and "told me I needed to come get my mother before he killed her." She also testified that she came to the hospital after the 2012 assault and observed her mother's injuries.

During the punishment phase of the trial, State's Exhibit 9 was admitted into evidence. This exhibit consisted of Debra's medical records from the years 2001 and 2002 concerning incidents of alleged domestic violence. State's Exhibits 30, 31, and 32 were also admitted into evidence during the punishment phase of the trial. These exhibits consisted of "computer records of Appellant's prior criminal history."

The trial court's written judgment included an order for restitution in the amount of $51,208.00. During the punishment phase of the trial, the State offered its Exhibit 29, Debra's victim impact statement. State's Exhibit 29 was admitted with a stipulation by the defense that it contained a summary of the medical costs incurred by the victim. On State's Exhibit 29, under "financial loss" was listed $45,570 in hospital expenses and $5,638 in loss of income from work. The sum of these amounts is the amount of restitution ordered in the trial court's judgment. Restitution, however, was not included in the trial court's oral pronouncement of appellant's sentence, and was not mentioned at all in the punishment phase of the trial.

## ISSUES

In his first issue, appellant contends he was denied his constitutional right of confrontation regarding State's Exhibit 9 because the State failed to lay the proper predicate for admission of medical records containing hearsay. In his second issue, appellant asserts that the trial court erred by admitting computer records of his prior criminal history when the State failed to show that he was the person convicted of the prior offenses. In his third issue, appellant

—3—

contends the trial court's judgment should be reformed to delete $51,208.00 in restitution because it was not included in the trial court's oral pronouncement of his sentence.

## DISCUSSION

### A. Admission of Exhibit 9

State's Exhibit 9 was introduced at the punishment phase of the trial before the court without a jury. Exhibit 9 contained medical records from incidents of domestic violence in 2001 and 2002. Appellant contends that Exhibit 9 was offered and objected to but not formally admitted into evidence. Appellant argues Exhibit 9 was inadmissible because it denied him the constitutional right to confront the witnesses testifying against him. U.S. CONST. amend. VI. Citing *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008), appellant contends the admission of Exhibit 9 was harmful error, and that therefore his sentence must be reversed. *See also Crawford v. Washington*, 541 U.S. 36, 68 (2003) (testimonial out-of-court statements barred under Confrontation Clause unless witnesses unavailable and defendant had prior opportunity for cross-examination, regardless of whether statements deemed reliable by court).

The record reflects that the trial court did admit Exhibit 9, "subject to any objection" by the defense. The parties conferred with the court regarding the contents of the CD containing Exhibit 9, and appellant's counsel agreed that the State had "satisfied the requirement on the business records affidavit." *See* TEX. R. EVID. 902(10). But appellant's counsel stated, "[w]e would object to any contents that are hearsay under the 6th Amendment." The court overruled the objection, stating:

> I will overrule that objection. As the fact finder, the Court is aware and can exclude any [in]admissible hearsay testimony or evidence that's contained in that exhibit and will only consider what is proper and relevant to this particular case. So, with that stipulation that objection is overruled.

The State argues that (1) the only specific objection presented to and ruled on by the trial court was hearsay; (2) the trial court ruled that it would not consider any inadmissible hearsay in Exhibit 9; (3) appellant does not cite any portion of the record showing that the trial court did consider any inadmissible hearsay from Exhibit 9, and the record reflects no such consideration; (4) in any event, the specific contents of Exhibit 9 complained of in appellant's brief[2] are statements made to medical personnel by appellant's wife, the victim of the offense, who appeared and was cross-examined at both phases of the trial. Appellant's wife testified to the specific incidents appellant identifies in his brief as the subject of his complaint on appeal, and she was available for cross-examination by appellant's counsel.

We conclude the trial court did not err by admitting Exhibit 9 for the reasons presented by the State. In addition, any error was harmless beyond a reasonable doubt under the standards of *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007).[3] The assaults reflected in the portions of Exhibit 9 that are the subject of appellant's complaint were evidenced by the testimony of appellant's wife at trial. Other witnesses corroborated her testimony of previous domestic violence by appellant. These witnesses were also available for cross-examination at trial. Considering the record as a whole, we conclude that any error in admitting Exhibit 9 was harmless beyond a reasonable doubt. *Id.* We overrule appellant's first issue.

---

[2] In his brief, appellant specifically complains of the following:

> State's Exhibit 9, pages 645-668 addresses an August 7, 2002, concussion, hematoma, and "coon-eyes." On page 648, it was specifically noted that Mrs. Whitehead had been involved in domestic violence and identified Russell Whitehead as the cause of the injuries. State's Exhibit 9, pages 682-700 consists of medical records pertaining to Mrs. Whitehead's broke arm. It was noted that Mrs. Whitehead became teary when she was questioned about domestic violence.

Appellant also argues that "[t]he State emphasized a pattern of family violence in its closing."

[3] In determining whether a Confrontation Clause error may be declared harmless beyond a reasonable doubt, we consider: (1) how important the out-of-court statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Scott*, 227 S.W.3d at 690.

## B. Admission of computer records

In his second issue, appellant complains of the trial court's admission of State's Exhibits 30, 31, and 32. He contends the exhibits were "not properly before the court" because "the State did not technically get them admitted." He also complains that the records "were not judgments of conviction, merely computer-generated disposition," and the State did not connect him to the evidence. At trial, appellant objected that the exhibits were not self-authenticating certified copies of public records. He also objected to the lack of identifying information connecting him to the exhibits. He contends these objections should have been sustained, and that a new punishment hearing is required because they were not.

The State responds that "the abstracts of appellant's prior convictions were sufficiently identified to permit their admission, and in any event any error was harmless in light of the record as a whole." State's Exhibits 30–32 are computer printouts of database entries for 1979, 1981, and 1982 misdemeanor marijuana charges. Each is for "Russell Rafael Whitehead" with a date of birth of "02111956." State's Exhibit 27, the marriage license for appellant and Debra, reflects that appellant's name is "Russell Rafael Whitehead" and his date of birth is "2-11-56." Debra also testified to appellant's full name and his birthdate of February 11, 1956. Defense counsel conceded during closing argument at the punishment phase of the trial that appellant "did have some misdemeanor marijuana charges several years ago that are in evidence, but there's nothing else in the record regarding charge[s] of violent behavior or any other crime of violence on Mr. Whitehead's record." Other than this argument, there is nothing in the record to indicate the trial court considered Exhibits 30–32 in assessing 25 years' imprisonment for appellant's aggravated assault of his wife.

The State concedes that the trial court did not explicitly admit the exhibits but "merely overruled appellant's objections to their admission." Assuming the trial court did admit the

exhibits into evidence erroneously, we conclude that any such error did not result in harm to appellant. We review non-constitutional harm under the guidance of Texas Rule of Appellate Procedure 44.2(b), which provides that we disregard any error that does not affect appellant's substantial rights. A substantial right is affected when the error had a substantial and injurious effect or influence in determining a jury's verdict. *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012). In making the harm analysis, we examine the entire trial record and calculate, as much as possible, the impact of the error upon the rest of the evidence. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

At the outset of the punishment phase, the trial court stated that the range of punishment was not less than five nor more than ninety-nine years or life in the penitentiary. The trial court assessed a 25-year sentence. The trial court heard evidence of the serious injuries suffered by appellant's wife from the 2012 assault, including medical testimony during the guilt/innocence phase of the trial from her neurosurgeon about the extent of her life-threatening injuries. The trial court confirmed the jury's finding of the use of a deadly weapon, "the hand or elbow of Russell Whitehead or object unknown to the Grand Jury during the commission of said assault." We conclude that any error in the admission of the computer records had no impact on the trial court's sentence of 25 years, and was harmless. We overrule appellant's second issue.

### C. Restitution

The code of criminal procedure provides that a trial court that sentences a defendant may order the defendant to make restitution to a victim of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West Supp. 2014). A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement. *Id.* art. 42.01 § 1 (West Supp. 2014); *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014). When the oral pronouncement of sentence and the written

judgment vary, the oral pronouncement controls. *Burt*, 445 S.W.3d at 757. An order of restitution must be included in the trial court's oral pronouncement of sentence. *See id.* The appropriate remedy when restitution improperly has been placed in the written judgment is to modify or reform the judgment to delete the order of restitution. *Sauceda v. State*, 309 S.W.3d 767, 769 (Tex. App.—Amarillo 2010, pet. ref'd).

The State concedes that the sentence of restitution should have been orally pronounced by the trial court in appellant's presence at sentencing. Citing *Burt*, the State urges that we abate the appeal and remand the cause to the trial court for "clarification of the trial court's sentence, including the restitution award." In *Burt*, the court remanded the case for a restitution hearing where the amount and recipients of restitution were not orally pronounced. *Id.* at 761. But in contrast to the record here, the trial court in *Burt* has orally pronounced the "fact" of restitution in sentencing, but not an amount. *Id.* at 759. The *Burt* court contrasted cases "in which neither the parties nor the judge ever mentioned restitution during the sentencing hearing or as part of the sentence." *Id.* The court explained, "[i]n those cases, the defendant was never put on notice that restitution might be ordered until it first appeared in the written judgment." *Id.* at 759–60. The court further explained:

> That scenario leaves the defendant without notice and incapable of objecting or preparing a defense to the restitution order. That procedure—failing to mention restitution until its entry in the written judgment—also violates a defendant's legitimate expectation that the sentence actually received is the same as that orally pronounced in open court. In effect the restitution order popped up unexpectedly in the written judgment. In those cases, the defendant was entitled to have the restitution order deleted because the written judgment did not match the oral pronouncement of sentence.

*Id.* (footnotes omitted).

The trial court erred by failing to orally pronounce the sentence of restitution. We therefore sustain appellant's third issue, and reform the trial court's judgment to delete the

–8–

language regarding the payment of restitution.  *See Alexander v. State*, 301 S.W.3d 361, 364 (Tex. App.—Fort Worth 2009, no pet.) (appellate court may reform judgment to delete payment of restitution).

## CONCLUSION

We overrule appellant's first and second issues.  We sustain his third issue, modify the trial court's judgment to delete the language regarding payment of restitution, and affirm the trial court's judgment as modified.


/Michael J. O'Neill/
_____
MICHAEL J. O'NEILL
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)

140230F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

RUSSELL R. WHITEHEAD, Appellant

No. 05-14-00230-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court At Law
No. 1, Kaufman County, Texas
Trial Court Cause No. 31618CC.
Opinion delivered by Justice O'Neill,
Justice Fillmore and Chief Justice Thomas,
Retired, participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to delete the order of restitution.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of December, 2014.